UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BETH S. GATES,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | NO.  C14-1902-BHS-JPD<br><br><br>REPORT AND RECOMMENDATION |

      Plaintiff Beth S. Gates appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for a finding of disability.

                           I.      FACTS AND PROCEDURAL HISTORY

      Plaintiff is a 60-year-old woman with a high school education.  Administrative Record ("AR") at 76.  Her past work experience includes employment as a cashier and sandwich maker.  AR at 88.  Plaintiff was last gainfully employed in October 1999.  *Id.*

      On September 18, 2002, Plaintiff filed an application for DIB, alleging an onset date of

REPORT AND RECOMMENDATION - 1

October 1, 1999.  AR at 57-59.  Plaintiff's date last insured ("DLI") is December 31, 2001, and thus in order to establish that she is entitled to benefits in this DIB-only case, she must show that she was disabled on or before her DLI.  *See* 20 C.F.R. §§ 404.131, 404.321.  Plaintiff asserted that she is disabled due to left shoulder problems, plantar fascia rupture in her right foot, and pain in her left hip and lower back.  AR at 70.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 29-32, 35-37.  Plaintiff requested a hearing, which took place on May 23, 2005.  AR at 505-21.  On December 20, 2005, the ALJ issued a decision finding Plaintiff not disabled.  AR at 15-21.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 6-9, and Plaintiff appealed to this court.  The undersigned entered a Report and Recommendation ("R&R") recommending affirming, and the Hon. Thomas S. Zilly did not adopt the R&R, instead reversing and remanding for further proceedings.  AR at 721-35.

The ALJ conducted another hearing on October 16, 2007 (AR at 1028-47), and again found Plaintiff not disabled on January 10, 2008.  AR at 703-717.  Plaintiff appealed to this court, and the undersigned entered an R&R recommending affirming the Commissioner's decision.  AR at 1089-1106.  The Hon. Richard A. Jones did not adopt the R&R, and instead reversed and remanded for further proceedings.  AR at 1080-88.

A different ALJ held another hearing (AR at 1646-86), and again found Plaintiff not disabled.  AR at 1059-74.  On December 16, 2014, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. EVALUATING DISABILITY

As the claimant, Ms. Gates bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On January 29, 2014, the ALJ found:

1. The claimant's DLI is December 31, 2001.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 1999, through the DLI.

3. Through the DLI, the claimant's right plantar fascial tear, iliotibial band syndrome/left hip and left knee bursitis, obesity, and depressive disorder were severe.

4. Through the DLI, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Through the DLI, the claimant could lift/carry up to 10 pounds; stand/walk and sit six hours each in an eight-hour workday; occasionally push/pull with lower extremity; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl, and climb stairs; and perform simple, repetitive tasks.  She must avoid even moderate exposure to heights and other hazards.

6. Through the DLI, the claimant was unable to perform any past relevant work.

7. Through the DLI, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

REPORT AND RECOMMENDATION - 5

8. The claimant was not under a disability, as defined in the Act, at any time from October 1, 1999, the alleged onset date, through the DLI.

AR at 1062-1073.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. The ALJ erred in discounting Plaintiff's credibility and lay witness statements without curing the errors identified by the Court and Appeals Council; and

2. The ALJ failed to account for all limitations caused by Plaintiff's depression in the RFC assessment.[2]

Dkt. 17 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred in Discounting Plaintiff's Credibility.</u>

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing

---

[2] Because the ALJ erred in assessing Plaintiff's credibility as well as the lay witness statements, as explained *infra*, the Court need not address the sufficiency of the ALJ's RFC determination.

REPORT AND RECOMMENDATION - 6

that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the prior court remand orders, and Appeals Council orders effectuating those court orders, instructed the ALJ on remand to, *inter alia*, identify which portions of Plaintiff's testimony were undermined by her daily activities, and determine whether Plaintiff's activities consumed a substantial part of her day and demonstrated capabilities transferable to a work setting. AR at 720, 734, 1084-87, 1110-11.

As to the findings related to daily activities, the ALJ's third decision does not materially differ from the prior decision. *Compare* AR at 712 *with* AR at 1067. The vast majority of the findings are identical, but the ALJ's third decision adds one concluding sentence: "While such activities do not necessarily directly correspond to work abilities, they do illustrate the chasm between her chosen daily regimen and her alleged limitations." AR at 1067.

This additional sentence, along with the remainder of the findings regarding daily activities, falls far short of the specificity required by prior court orders, the Appeals Council, and Ninth Circuit authority. There are two ways a claimant's daily activities may undermine

REPORT AND RECOMMENDATION - 7

her credibility: the activities must either contradict her testimony, or demonstrate capabilities transferable to a workplace setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). It appears that the ALJ attempted to indicate that he was relying on the first method, but nonetheless he did not explain how the activities reported to Plaintiff's examining psychiatrist conflicted with her hearing testimony.

Plaintiff testified that she had concentration problems, such that when she could not follow when she would try to read or watch television. AR at 1669-70. She testified that she had been able to return to work for a short time after her April 1999 accident, but could only stand (while wearing a protective boot) for 10-15 minutes at a time. AR at 1668. She also testified that if she was not wearing her protective boot, she could stand only for brief periods totaling half an hour out of an eight-hour workday, and her sitting ability was also limited. AR at 1668-69. She testified that she could occasionally wash dishes and prepare meals for her family, but did not enjoy these activities as she had before her accident. AR at 1661-62.

Plaintiff's examining psychiatrist recorded the following self-reported activities in July 2002 (more than six months after the DLI):

> On an average day she gets up at perhaps 9:00 in the morning, as she gets tired of laying there, she says. She may put the coffee on, shower and get dressed. She may get food from the freezer out for dinner. If she has no appointments she will sit on the patio. She likes to read a lot and tries to avoid television. She may play a game on the computer or take a nap. If she has the energy, she will do some housework, like sweeping floors. She said that is all she can do in one day and can't get the floor mopped. She may eat around 4:00 or 5:00. In the evening she may tend her garden. She stands with the hose and waters while her husband does all the other gardening tasks. Maybe in the evening they will watch television before going to bed around 11:00 at night. She said she lays there for a long time before going to sleep.
>
> She rides a stationary bicycle for a ½ mile to keep her knee loosened up and the pain decreased, five days weekly. She wistfully recalls that before re-injuring her foot she was doing more than 2 miles daily. Her son does the dishes. She does some of the laundry, however, her husband carries the baskets. She grocery shops with her husband on Fridays, walking very slowly, with her foot

REPORT AND RECOMMENDATION - 8

swelling and in pain afterwards.  Once every other week she helps her sister by folding bulletins at the church.

AR at 428.

Although the ALJ indicates that Plaintiff's activities as described to her examining psychiatrist, as compared to her hearing testimony, "illustrate the chasm between her chosen daily regimen and her alleged limitations[,]" the ALJ does not identify any particular conflict and thus failed to comply with his instructions on remand, as well as the Ninth Circuit's requirements that credibility findings be specific. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

The Commissioner contends that "this type of credibility analysis is permissible[,]" citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Dkt. 21 at 10.  *Rollins* indicates that an ALJ may rely on daily activities as a ground to discredit a claimant, but does not stand for the proposition that an ALJ need not explain how the cited activities contradict the claimant's allegations.  The *Rollins* court detailed the contradictions inherent between the plaintiff's allegations of "totally disabling pain" and her self-reported ability to attend to all of her children's needs ("meals, bathing, emotional, discipline, etc."), cook, clean her house, complete laundry, go shopping, attending therapy and other meetings every week, and manage her children's lessons and games schedules.  261 F.3d at 857.  The "chasm" between the *Rollins* plaintiff's activities and allegations is obvious and identified by the ALJ, whereas the ALJ decisions in this case — all three of them — fail to explain how the activities Plaintiff reported to her examining psychiatrist undermine her credibility.

This error is not harmless, because the ALJ's other reasons to discount Plaintiff's credibility also fail.  The ALJ noted that Plaintiff was able to "move easily" during at least one

REPORT AND RECOMMENDATION - 9

of the administrative hearings. AR at 1067. Regardless of whether this was observed at the most recent hearing, or one of the earlier hearings, it did not occur during the period at issue: Plaintiff's DLI is December 31, 2001, and her hearings took place in 2005, 2007, and 2013. Plaintiff testified that she had tendon surgery in 2008, and knee replacement two years before her most recent hearing, and thus her post-DLI treatments impacted her ability to ambulate effectively. AR at 1665, 1672, 1675-76. Accordingly, an ALJ's observation of Plaintiff's ability to walk post-DLI is not probative as to her abilities pre-DLI.

The ALJ also discounted Plaintiff's credibility on the grounds that her physicians did not restrict her from all activities. In April 1999, a treatment note indicates that Plaintiff had not yet received time loss (for her worker's compensation claim) because her physician had indicated that she could perform a job such as a "theater cashier counter" where she was allowed to sit down and did not have to stand. AR at 1067-68 (citing AR at 238). The doctor wrote that Plaintiff responded to this suggestion by indicating that there is no such job available in Whatcom County, where she lives. AR at 238. The doctor found that if "that is true, she is entitled to back time loss pain and future time loss pay until this claim is closed." *Id*. The ALJ inferred from this note that Plaintiff had "volitionally limited the area in which she was willing to take a job[,]" which would not necessarily show that she was disabled for purposes of the Act. AR at 1067-68. But the ALJ's interpretation of the note is taken out of context: the job discussed in the treatment note is hypothetical only, and the location is relevant for purposes of the worker's compensation claim. Thus, this medical note does not constitute substantial evidence supporting the ALJ's inference.

The ALJ also indicated that Plaintiff's pre-DLI medical evidence fails to corroborate her claims of depression, and that the post-DLI evidence demonstrates that her depression symptoms resolved quickly with treatment. AR at 1068. The ALJ concluded that this

REPORT AND RECOMMENDATION - 10

evidence showed that her "mental health symptoms were not severe enough for her to pursue treatment during the relevant period. Further, when she finally began treatment, after the [DLI], she recovered quickly, corroborating assessments pre-DLI that her depression was not significant." AR at 1069.

Although the ALJ suggested that Plaintiff's depression was a severe impairment and yet not disabling during the relevant period (AR at 1063, 1069), it is not clear how the evidence cited by the ALJ undermines Plaintiff's credibility. Plaintiff testified at the hearing that she did not initially recognize that she was depressed, but eventually was convinced to seek treatment. AR at 1660, 1662-64. The ALJ cited medical expert testimony that Plaintiff's depression was mildly to moderately limiting in July 2002 (upon diagnosis) as well as "even five to six years after the [DLI,]" which is inconsistent with the ALJ's finding that Plaintiff's depression symptoms "resolved quickly with treatment." AR at 1069. The ALJ conclusorily stated that "it is clear that during the relevant period and for some years after, [Plaintiff's] depressive symptoms were not at the extent she alleged at the hearing." *Id*. Plaintiff's hearing testimony regarding depression, however, is not necessarily inconsistent with mild-to-moderate limitations. *See* AR at 1660 (Plaintiff describing a lack of self-esteem, quick temper, and social withdrawal), 1663 (Plaintiff describing how she did not get "enjoyment out of life and … my kids and family and activities we used to do"), 1671 (Plaintiff describing how she would get "so frustrated and angry about [her circumstances] and I'd want to scream or throw something"). Thus, the ALJ's reasoning is not clear, nor supported by substantial evidence.

Because the ALJ's adverse credibility determination is deficient yet again, despite multiple opportunities to correct the errors previously identified in court orders as well as Appeals Council instructions, the Court recommends that this case be remanded for a finding of disability, rather than remanded for further proceedings. The Commissioner makes no effort

REPORT AND RECOMMENDATION - 11

to argue why further proceedings would be appropriate or necessary, instead relying on boilerplate black-letter law. Dkt. 21 at 14-15. Based on the protracted proceedings in this case, the Court has lost confidence that "'additional proceedings can remedy defects in the original administrative proceeding[.]'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). Plaintiff's benefits application was filed nearly thirteen years ago, and errors persist in the ALJ's decision despite three rounds of administrative proceedings. The limitations described by Plaintiff at the administrative hearing are inconsistent with sitting and standing requirements inherent in any job, and thus if credited as true would support a finding of disability. AR at 1668-69 (describing sitting ability limited to less than an hour, and standing ability limited to less than half an hour in an entire workday). The ALJ's repeated failure to articulate proper reasons to discredit Plaintiff suggests to this court that no such proper basis exists, and that she is, as a result, entitled to benefits. *See Garrison*, 759 F.3d at 1019-20.

B.     The ALJ Erred in Discounting Lay Statements.

The ALJ summarized lay statements written by Plaintiff's mother and sister, and indicated that the activities described by Plaintiff's contradict her own testimony. AR at 1069-70 (citing AR at 176-80, 187-91). On the contrary, the lay statements describe limitations consistent with Plaintiff's allegations related to her limited activities, and thus the ALJ erred in finding that the statements indicate that Plaintiff is more capable than she alleged at the hearings. *Compare* AR at 178-79, 189-90 (describing Plaintiff's ability to do some household tasks (nothing requiring prolonged standing or bending), difficulties walking, inability to carry groceries) *with* AR at 1660-62, 1672-73, 1676-78 (describing ability to take care of some household tasks intermittently, difficulties with grocery shopping, walking limitations). Although the ALJ posited that the lay statements indicate an ability to perform sedentary work,

REPORT AND RECOMMENDATION - 12

this contention is entirely unexplained. Thus, these lines of reasoning are not germane, and are thus insufficient. *See Smolen v. Chater*, 80 F.3d at 1288-89 (requiring an ALJ to provide germane reasons to discount a lay witness statement).

Furthermore, the fact that Plaintiff's family members wrote their statements a year after her DLI is not a germane reason to discount opinions discussing how Plaintiff had changed since her injuries, which occurred before the DLI. *See* AR at 175, 179, 189 (addressing changes since the injuries).

Again, the errors in the ALJ's assessment of the lay statements has been noted in prior court remand orders and Appeals Council instructions (AR at 1087, 1110), and yet the ALJ did not provide a materially different rationale. *Compare* AR at 714-715 *with* AR at 1069-70. As explained above, the Commissioner has provided no analysis as to why this error should be remedied by further proceedings.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for a finding of disability. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 8, 2015**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 11, 2015**.

1  This Report and Recommendation is not an appealable order. Thus, a notice of appeal
2  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the
3  assigned District Judge acts on this Report and Recommendation.

4  DATED this 25th day of August, 2015.

A
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 14